JON M. SANDS
Federal Public Defender
District of Arizona
850 W. Adams, Suite 201
Phoenix, Arizona 85007
Telephone: 602-382-2700

ANA L. BOTELLO, #AZ 030528
Asst. Federal Public Defender
Telephone: 602-514-7500
Ana_Botello@fd.org
Attorney for Defendant

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| United States of America, | CR-21-00494-PHX-DWL |
|---|---|
| Plaintiff, | **SENTENCING MEMORANDUM AND MOTION FOR DOWNWARD DEPARTURE/VARIANCE** |
| vs. | |
| Kelly Pichardo, | |
| Defendant | |

Defendant, Ms. Kelly Pichardo ("Ms. Pichardo"), by and through undersigned counsel, respectfully submits the following memorandum for the Court's consideration in determining the appropriate sentence in this matter. Ms. Pichardo pleaded guilty on May 4, 2022, to the offense of *Interference with Flight Crew Member* in violation of 49 U.S.C. § 46504. Sentencing is currently set before this Court on August 29, 2022. Ms. Pichardo agrees with the PSR recommendation and respectfully asks this Court to sentence her to sixty months (5 years) probation for the reasons outlined herein.

# SENTENCING MEMORANDUM

## I. Sentencing Considerations

The Court must impose a sentence that is sufficient, but not greater than necessary to meet the purposes of the sentencing statutes, namely retribution, deterrence, incapacitation, and rehabilitation. 18 U.S.C. § 3553(a). Other factors to be considered in determining a particular sentence include: "the nature and circumstances of the offense and the history and characteristics of the defendant;" "the kinds of sentences available;" the applicable sentencing range established by the sentencing guidelines; "any pertinent policy statement issued by the Sentencing Commission;" "the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct;" and "the need to provide restitution to any victims of the offense." 18 U.S.C. §3553(a)(1), (3)-(7).

The Sentencing Guidelines are only one of the factors that the Court is to consider. The Supreme Court has instructed that sentencing courts "may not presume that the Guidelines range is reasonable." *Gall v. United States*, 552 U.S. 38, 50 (2007) (*citing Rita v. United States*, 551 U.S. 338 (2007)). The sentencing court must make an "individualized assessment based on the facts presented." *Id*. Courts should impose the punishment that "fits the offender and not merely the crime." *Pepper v. U.S.*, 562 U.S. 476 (2011).

The Presentence Report filed on July 14, 2022, recommends a sentence of sixty months (5 years) probation. Ms. Pichardo submits that the factors set forth in § 3553(a) support a sentence of sixty months of probation.

### a. History and Characteristics

Ms. Pichardo is a 32-year-old woman with a history of mental illness beginning at 11 years old (to include anxiety, depression, PTSD, substance abuse, suicide attempts, and sexual abuse/molestation when she was a child). Specifically, Ms. Pichardo has been previously diagnosed with having Borderline Personality Disorder. *See* PSR at ¶54. Per Mayo Clinic, this mental illness makes it difficult for an individual to manage and control their emotions and behavior (wide mood swings, inappropriate, intense anger, losing one's temper, or having physical fights) and take on impulsive and risky behaviors. [1] has lived her entire life in New York. While genetics and brain abnormalities, are noted causes of this mental health disorder, it's also likely that Ms. Pichardo's diagnosis for this personality disorder was caused, at least in part by, the fact she and her sister were molested by their stepfather as children. *Id.* Ms. Pichardo's sister, who was also molested, has been institutionalized after diagnosis of Bipolar Disorder and Schizophrenia. There is an abundance of literature which indicates that early life trauma and adversity are strong risk factors for subsequent self-medication and addiction. [2] This case is not simply a case about Ms. Pichardo abusing alcohol before she boarded a flight—this is a case where alcohol, the stresses of flying, and the fact that Ms. Pichardo, while constricted to her airplane seat, was touched by a stranger, brought up all of the feelings she felt as an abused child and caused her to snap.

---

[1] *See* Borderline Personality Disorder available at https://www.mayoclinic.org/diseases-conditions/borderline-personality-disorder/symptoms-causes/syc-20370237. Last accessed Aug. 5, 2022.

[2] Robert M. Post & Gabriele S. Leverich, Treatment of Bipolar Illness: A Case Book for Clinicians and Patients 31-37 (W.W. Norton and Company Inc., 1st ed. 2008).

3

Ms. Pichardo has a criminal history that reflects this same diagnosis—impulsive decisions, substance abuse, assaultive behavior, and disorderly conduct. Fortunately, Ms. Pichardo is on the mend and attempting to bring stability to her life. Ms. Pichardo was released on pretrial conditions after her arrest. She returned home to New York where she lives with her mother and her twelve-year-old daughter. Since her arrest, Ms. Pichardo's main focus has been ensuring that her daughter has a full and enriching life. Ms. Pichardo spends most of her extra income and extra time taking her daughter to extracurricular programs. Her daughter suffered greatly when Ms. Pichardo was incarcerated in the past and Ms. Pichardo has made every attempt to ensure she is not yet separated from her daughter to minimize future psychological harm to her daughter. Further, Ms. Pichardo has been in a two-year relationship that will continue through her supervision. She currently has stable employment at as a hostess and waitress. Despite knowing of her charges, her supervisor wrote to support Ms. Pichardo—so she may remain out of custody and working. In the future, Ms. Pichardo has goals of owning a car rental company as well as apartments to rent out. Her two main goals in life are to provide for her daughter and purchase a home for her mother.

### b. Nature and Circumstances of the Offense

On February 21, 2021, Ms. Pichardo was on an American Airlines flight from Dallas to Los Angeles. Ms. Pichardo was having a loud conversation with her friend who used the inappropriate word "nigga[3]" in conversation. A Black passenger seated behind Ms. Pichardo, who had previously attempted to flirt with

---

[3] *See* Per Merriam-Webster Dictionary, this is an offensive racial slur that is sometimes used by Black people to refer to themselves or another Black person in a neutral or positive way. https://www.merriam-webster.com/dictionary/nigga. Last accessed Aug. 5, 2022.

her friend, then touched Ms. Pichardo on the shoulder to get her attention and told her not to use that word. Ms. Pichardo did not react well to being touched and scolded by this passenger. When he, and others, attempted to record her using their cellphone cameras, she became even more irate. While above Arizona airspace, a flight crew member was summoned to diffuse the situation and, in an attempt to bypass the flight crew member, who was standing in the aisle, Ms. Pichardo lunged toward him and pushed him in the chest. The flight was then rerouted to Sky Harbor International Airport in Phoenix where police boarded and arrested Ms. Pichardo and her friend for assault and disorderly conduct. As a result of the incident, an indictment was filed in the U.S. District Court, District of Arizona, and Ms. Pichardo appear via summons on July 21, 2021.

    c. **Individual Characteristics; Motion for Departure/Variance Based on §5H1.3 Mental and Emotional Conditions, §5K2.13 Diminished Capacity and §5K2.0(a)(2) Circumstances Not Adequately Taken into Consideration**

The USSG Sentencing Guidelines §5H1.3 Mental and Emotional Conditions, §5K2.13 Diminished Capacity and §5K2.0(a)(2) Circumstances Not Adequately Taken into Consideration permit this Court to fashion a departure or variance based on 18 § 3553(b), and circumstances present to a substantial degree and not otherwise considered by the sentencing guidelines. In this case, Ms. Pichardo had an incredibly difficult and unstable childhood. Ms. Pichardo, under the influence of alcohol on the flight, lost it when this passenger touched her and confronted her and her friend while on the plane. While Ms. Pichardo's past trauma and mental health history do not excuse her behavior on the flight, they certainly cast a light on why Ms. Pichardo may have reacted the way that she did.

After over a year since all of this has happened, Ms. Pichardo has found stability in her employment and is also undergoing mental health treatment to help her address her issues. Sending Ms. Pichardo back to prison would mean disrupting the mental and financial stability she has struggled to acquire. For all the reasons, this Court should fashion a downward departure or variance pursuant to §5H1.3 Mental and Emotional Conditions, §5K2.13 Diminished Capacity and §5K2.0(a)(2) Circumstances Not Adequately Taken into Consideration as these circumstances, taken together, are not adequately considered by the applicable sentencing guidelines in Ms. Pichardo's case. This Court should arrive at a sentence of probation to allow Ms. Pichardo to continue to demonstrate to the Court that with proper medication and treatment, she can continue to work and begin to make restitution payments for the $10,000+ she will owe at the culmination of her case.

Should this Court not want to give her probation, it is respectfully recommended that the four-month term of incarceration be served as home detention. USSG §5B1.1(a)(2) discusses Zone B of the Sentencing Table—where Ms. Pichardo lands—and allows this court to impose home detention as a condition of probation. Alternatively, USSG §5F1.2 expressly recommends home detention instead of a term of incarceration when the court finds the reasons are justified. Here, Ms. Pichardo's diagnoses of Anxiety, Depression and Borderline Personality Disorder would be the primary reasons to keep her out of prison. In fact, these very diagnoses are reasons other district court judges have granted compassionate release to individuals during the pandemic. The Bureau of Prisons continues to remain on lockdown due to the Covid-19 pandemic and individuals that suffer from mental health conditions continue to be distraught by the measures taken by the BOP to combat the spread of Covid-19. The main difference between probation

and home detention would be that Ms. Pichardo would be confined to her home with an ankle monitor, curfew and probation officer. For the reasons stated above, this option would be better than prison. However, the added supervision (ankle monitor and curfew) has been unnecessary while on pretrial release and probation conditions are preferred.

### d. Disproportionate Effects of a Prison Sentence

Ms. Pichardo respectfully disagrees with the government that a sentence involving prison is necessary. Ms. Pichardo acknowledges that this incident caused harm and she wants to make things right. The best way she can do this is through paying restitution and remaining law abiding. A sentence of imprisonment is contrary to this goal. Ms. Pichardo currently has stable employment that will allow her to commence making restitution payments. The government's recommendation will put her back at least four months of earnings that she can use for the restitution. Furthermore, a prison sentence will likely cost her the job she currently has and, it may take time to secure employment again. A prison sentence will also disrupt Ms. Pichardo's stability and ability to provide a stable life for her daughter. These disproportionate effects are unwarranted because four-month sentence will not teach her anything she has not already learned during these proceedings. This is a felony that will be on Ms. Pichardo's record for the rest of her life. She has been on pretrial release conditions—a deprivation of her liberty that will continue while she is on probation.

As a single mother, Ms. Pichardo's incarceration also affects her 12 year-old daughter who suffered greatly the last time her mother was incarcerated. Because her daughter's father is also incarcerated, Ms. Pichardo is the only parent active in

her daughter's life. Past courts have granted downward departures and variances when the defendant is an irreplaceable caretaker of children. *See U.S. v. Leon*, 341 F.3d 928, 931 (9th Cir. 2003); USSG § 5H1.6 (extraordinary family hardship); *U.S. v. Aguirre*, 214 F.3d 1122, 1127 (9th Cir. 2000) (Four-level downward departure by the district court for extraordinary family circumstances was not an abuse of discretion "based on the fact that there is an 8-year-old son who's lost a father and would be losing a mother for a substantial period."). While four months of prison may not seem much of a punishment, especially to someone who has spent many more months than that in prison before, it is a world of hurt to a child without another parent to care for them.[4]

## II. Conclusion

The § 3553 factors support a sentence of sixty months' probation. The requested sentence balances the need to afford adequate deterrence, provide just punishment, promote respect for the law, protect the public, and reflect the seriousness of the offense while also accounting for Ms. Pichardo's need to pay restitution and continue to prove stability for her daughter.

Respectfully submitted: August 8, 2022.

JON M. SANDS
Federal Public Defender

 *s/Ana Botello*
ANA BOTELLO
Asst. Federal Public Defender

---

[4] Keva M. Miller, The Impact of Parental Incarceration on Children: An Emerging Need for Effective Interventions 23 CHILD AND ADOLESCENT SOC. WORK J., 472, 472-474 (2006).